Aksana M. Coone (SBN 190125)
aksana@coonelaw.com
LAW OFFICES OF AKSANA M. COONE
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Phone: (310) 556-9650
Fax: (310) 954-9008

In Association with:

John H. Hickey (Fla. Bar No.: 305081)
hickey@hickeylawfirm.com
Cara Lea Hytinen (Fla. Bar No.: 1002261)
chytinen@hickeylawfirm.com
HICKEY LAW FIRM
1401 Brickell Ave
Suite 510
Miami, Florida 33131

*Pro Hac Vice to be Filed*

Attorneys for Plaintiff,
RALPH VAUGHN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH VAUGHN,<br><br>           Plaintiff,<br><br>vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br>d/b/a Princess Cruises,<br><br>           Defendant. | Case No.:  2:23-cv-1626<br><br>**COMPLAINT FOR DAMAGES FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL**<br><br><br>Complaint filed: March 3, 2023 |

COMES NOW plaintiff, RALPH VAUGHN and for cause of action against defendant complains and alleges as follows:

1

## THE PARTIES AND JURISDICTION

1.     This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

2.     **THE PLAINTIFF.** RALPH VAUGHN, is *sui juris* and is a permanent resident and citizen of Asheboro, North Carolina.

3.     **THE DEFENDANT.** The Defendant PRINCESS CRUISE LINES LTD. (hereinafter referred to as "Defendant" or "PCL") is a citizen of Bermuda, but maintains its principal place of business in Santa Clarita, California. PCL is incorporated outside the state of California and its principal executive office is in Hamilton Bermuda, but does business in the State of California, and at all times material hereto was and is doing business in Los Angeles County, California. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.     **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.     **VENUE AND PERSONAL JURISDICTION.** The Defendant, at all times material hereto, personally or through an agent, in the County and in the district in which this Complaint is filed:

      a.  Operated, conducted, engaged in, or carried on a business venture in this state and/or county; and/or

      b.  Had an office or agency in this state and/or county; and/or

c.  Engaged in substantial activity within this state; and/or

d.  Committed one or more of the acts stated in California Statutes, Sections 415.40, or 416.10;

6.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.    **DATE OF INCIDENT.** This incident occurred on March 31, 2022.

8.    **LOCATION OF INCIDENT.** This incident occurred on the vessel *Emerald Princess*, a ship in navigable water while RALPH VAUGHN was a passenger onboard. Accordingly, RALPH VAUGHN's claims are governed by the general maritime law. Specifically, the Plaintiff's incident occurred in the doorway of the entrance to and from the ship's interior to the Terrace pool on Deck 14.

9.    **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT.** At all times and material hereto, RALPH VAUGHN was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel. RALPH VAUGHN does not have a copy of the subject ticket but the Defendant does.

10.    **DESCRIPTION OF THE INCIDENT.** Under the General Maritime Law, PCL owes to its passengers, including the Plaintiff herein, a duty of reasonable care under the circumstances. The circumstances here are that because of PCL's negligence with respect to the dangerous condition of the doors, door frames and door components, the ingress and/or egress door on Deck 14 leading to the Terrace Pool slammed shut and caught RALPH VAUGHN's ring finger. Because PCL did not maintain or install a mechanism to prevent this heavy door from slamming shut, RALPH VAUGHN's finger was caught in the door on the latch side. Due to PCL's negligence, the Plaintiff suffered severe and permanent injuries and his fingertip was sheared off and cut at an angle from the first knuckle

3

to the tip under the nail.

11.    PCL chooses to install heavy ingress and egress doors on their ships. PCL knows the passengers must utilize these doors in order to enter and exit the interior of the ship. PCL knows that passengers are not familiar with the dangerous condition these doors may pose. PCL failed to adequately warn RALPH VAUGHN and other passengers that these doors may slam shut and cause serious injuries to the passengers. PCL did not place adequate warning signs at or around the door to alert passengers to the danger.

12.    On March 31, 2022, at approximately 10:45 a.m., RALPH VAUGHN attempted to exit the interior of the *Emerald Princess* on Deck 14 to take some photographs from the back of the ship where the Terrace Pool is located. RALPH VAUGHN had to utilize one of these heavy ingress/egress doors to exit the interior of the ship. Because PCL failed to maintain and install a mechanism on the door to prevent it from slamming shut, as the door closed behind him while he still had his left hand on it, the vacuum of air coming in the door and going up the hallway increased and the door suddenly jerked closed with extreme force. Due to PCL's negligence, RALPH VAUGHN's hand was caught in the heavy subject door, and he suffered a mildly displaced open left ring finger distal phalanx fracture.

13.    RALPH VAUGHN reported the incident to PCL's front desk staff member, security, and onboard medical staff. The security officer arranged to meet RALPH VAUGHN at his stateroom at 4:00 PM that same day. The officer showed up at 4:05 PM. His name is Mr. Ramesx. RALPH VAUGHN and the security officer went to the door that had severely injured RALPH VAUGHN. The security officer noted that the door was not operating properly because of the vacuum of air going into the hallway.

14.    PCL's negligent failure to provide a safe ship, negligent maintenance, negligent training of shipboard crewmembers, negligent violation of industry

standards, negligent failure to warn, along with PCL's negligent selection of materials and design caused RALPH VAUGHN's injuries. As a result of PCL's negligence, RALPH VAUGHN has suffered serious, debilitating, and permanent injuries, including a sheared fingertip and an open left ring finger distal phalanx fracture. This injury is permanent and significantly affects the life and abilities of RALPH VAUGHN.

15.    **PRINCESS'S MISSION STATEMENT.**  PCL has 17 ships that cruise worldwide and are marketed to both American and International passengers. The cruise line, in its literature and advertisements markets, advertises and represents directly or indirectly that it provides a safe, secure and fun experience, and through its senior representatives, has represented to the press and the public that cruising is a safe and secure experience or that cruising is at least as safe and secure as being on land.

16.    PCL owes a duty of reasonable care under the circumstances. The circumstances giving rise to this cause of action are as follows. PCL custom built the *Emerald Princess* cruise ship in a shipyard in Italy. The *Emerald Princess* is a cruise ship that PCL had custom built to specifications and designs which were made by or under the supervision and participation of PCL. The *Emerald Princess* was designed by or at the direction of PCL's shoreside New Build and other shoreside departments.  PCL employs architects, designers, and engineers. The ship was built in Italy at a shipyard under the constant supervision of PCL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, PCL has not only full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. PCL holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, PCL can withhold payment. That includes the materials used in all doors, door frames and door components

1    on Deck 14 onboard the *Emerald Princess,* which caused this incident and these

2    injuries.

3    17.    The *Emerald Princess* was christened on May 13, 2007. PCL has operated

4    and maintained the ship continuously since that time. The *Emerald Princess* has

5    a capacity for 3,080 passengers and 1,200 crew members.  The *Emerald Princess*

6    is a part of the *Crown*-class cruise ships, which also includes the *Ruby Princess*

7    *and Crown Princess*.  PCL has owned, operated and maintained the other ships in

8    the *Crown*-class listed above continuously since the time when each of those ships

9    were first built and put into service. PCL also custom built to specifications and

10   designs which were made by or under the supervision and participation of PCL

11   all the *Crown*-class ships listed above. The design and construction of these ships

12   was under the supervision and with the participation of PCL personnel who were

13   stationed onsite in the shipyard during construction.

14   18.    Throughout Princess' ships, it has ingress and egress doors to allow

15   passengers to travel from the interior of the ship to the exterior of the ship. The only

16   way for passengers to move around the ship is to utilize these heavy doors. PCL

17   knows that passengers will move across the ship, and on a repetitive basis, utilize

18   these doors. PCL knows that passengers are not familiar with these heavy doors.

19   Further, these doors connecting the interior to the exterior of the ship are escape

20   routes that must be maintained in a safe condition. These doors are also labeled with

21   "Exit" signs. Princess anticipates, expects and advises passengers to utilize these

22   doors for such purpose. As such, Princess has a duty to ensure that their doors are

23   safe for passengers to use.

24   19.    **NOTICE: ON-GOING, REPETITIVE PROBLEM.** PCL knew or

25   should have known that these heavy doors slamming closed posed a risk to

26   passengers due to the fact that the doors onboard their ships slamming closed is

27   an on-going and repetitive problem.

28   / / /

20.    **NOTICE: PRIOR SIMILAR INCIDENTS.** PCL knew or should have known about the dangerous condition because of prior similar incidents. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11ᵗʰ Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

  a.    Hedwig Ringger was severely injured on board the *Pacific Princess* on December 20, 2016. Ringger was in the process of entering the interior of the ship from an outside deck. As she was stepping over the threshold the heavy door slammed shut violently knocking her over and onto the ground. Ringger filed a lawsuit against PCL for this incident. *Hedwig Ringger v. Princess Cruises*, Case No. 2:17-cv-08420.

  b.    Robert King was severely injured on board the *Caribbean Princess* on January 22, 2016. King was entering the bathroom in his assigned cabin when the door suddenly and violently slammed shut causing an amputation injury to his left thumb. King filed a lawsuit against PCL for this incident. *Robert King v. Princess Cruises*, Case No. 2:17-cv-04066.

  c.    Jennifer Leonardi was severely injured on board the *Grand Princess* on August 5, 2017. Leonardi was injured when the

bathroom door in her stateroom violently slammed shut, resulting in the partial amputation of her thumb. Leonardi filed a lawsuit against PCL for this incident. *Jennifer Leonardi v. Princess Cruises*, Case No. 2:18-cv-07394.

d.    Brandon Sayareh was severely injured on board the *Grand Princess* on March 21, 2016. Sayareh was injured due to a broken catch on the door of his room. Sayareh filed a lawsuit against PCL for this incident. *Brandon Sayareh v. Princess Cruises*, Case No. 2:17-cv-20195.

e.    Charlotte P. Mowry was severely injured on board the *Nieuw Amsterdam* on January 7, 2019. Mowry had been walking from an exterior upper deck through a doorway to access the inside of the vessel when the door slammed shut on her left foot. Mowry filed suit as a result of this incident. *Charlotte P. Mowry v. Hal Nederland N.V., et al.*, Case No. 2:19-cv-02020. PCL and Holland America Group share common ownership and management.

f.    Jennifer Danks was severely injured on board the Eurodam on January 6, 2015. Danks had been attempting to enter the interior area of the Vessel's Panorama Deck through a heavy exterior door when the door suddenly slammed shut and caught Danks' left hand. This incident amputated the tips of Danks' middle and ring fingers. Danks filed suit as a result of this incident. *Jennifer Danks v. HAL Antillen N.V., et al.*, Case No. 2:15-cv-01974. PCL and Holland America Group share common ownership and management.

21.    **PRIOR SIMILAR INCIDENTS ON HOLLAND AMERICA GROUP PROVIDE NOTICE TO PCL BECAUSE THESE LINES SHARE COMMON OWNERSHIP AND MANAGEMENT:** Carnival Corporation & plc is a leisure travel company which includes a portfolio of nine cruise lines. This

8

portfolio includes Holland America Group and Princess Cruises. PCL is organized under Holland America Group within Carnival Corporation & plc. John Padgett is the president of Princess Cruises and is also the chief experience & innovation officer for Carnival Corporation. Padgett was appointed in October 2021 as president for PCL and he oversees all performance and operation functions of PCL and its global fleet. Since July 2014 Padgett has served as chief experience and innovation officer for Carnival Corporation where he is responsible for guest experience innovation, development, creation and operations integration, and leads the corporation's innovation unit. John Padgett reports directly to Jan Swartz, group president of Holland America Group. [1]Jan Swartz responsibilities include oversight of Princess Cruises, Holland America Line, Seabourn and P&O Australia, as well as Holland America Princess Alaska Tours and intergroup operations. For these reasons, notice to Holland America Line is notice to PCL.

22.    **NOTICE: CAUTION SIGNS.** Additionally, PCL knew or should have known about the dangerous condition of their heavy doors because PCL sometimes posted signs on deck doors that read "caution, strong winds." *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (holding that evidence that Carnival sometimes posted signs on a specific pool deck door that read "caution, strong winds" created "a genuine issue of fact" as to whether Carnival had actual or constructive notice of the hazardous condition); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015) (concluding that a cruise ship operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain.); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (holding that the "presence of warning cones" near an alleged slip and fall is evidence from which "a reasonable jury could ... infer that [the

---

[1] https://www.carnivalcorp.com/governance/executive-bios/officers

defendant] was on notice of the potentially hazardous condition."). PCL did post a sign on the interior of the subject door.



*The sign on the subject door*

The caution signs selected, approved, and utilized onboard the *Princess Emerald* show PCL knew that this door was hazardous to passengers. However, the dangerous condition was not readily apparent to passengers. This dangerous condition was not readily apparent because PCL approved and selected signage that did not communicate this hazard. The sign utilizes small font and is placed directly under a window. PCL approved this placement, which allowed sunlight to interfere with RALPH VAUGHN and other passengers' ability to read the sign.

23. **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** Additionally, PCL knows or should know that relevant industry standards, regulations, and codes dictate the safety standards for doors, door frames and door components. "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th

Cir.1978)).Such guidelines are also probative of the defendants' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

24.    **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.**  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including RALPH VAUGHN herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).  The Defendant's "duty is to warn of dangers

known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A*., 475 So. 2d 248 (Fla. 3d DCA 1985).

<u>COUNT I</u>

<u>NEGLIGENT MAINTENANCE</u>

25.    The Plaintiff, RALPH VAUGHN, hereby adopts and realleges each and every allegation in paragraphs 1 through 24, above.

26.    This is an action for negligent maintenance based on the Defendant PCL's failure to maintain and install a mechanism on the door to prevent it from slamming shut.

27.    **<u>DUTIES OWED BY PRINCESS:</u>** PCL owes a "duty to exercise reasonable care for the safety of its passengers," including the plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004).   The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

28.    PCL owes a duty as a common carrier to its passengers to maintain all areas of its ships, including the *Emerald Princess.* PCL owes a duty of reasonable care under the circumstances. The circumstances are as follows. PCL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Throughout PCL's ships, it has ingress and egress doors to

12

allow passengers to travel from the interior of the ship to the exterior of the ship. Further, these doors connecting the interior to the exterior of the ship are escape routes that must be maintained in a safe condition. These doors are also labeled with "Exit" signs. PCL anticipates, expects and advises passengers to utilize these doors for such purpose. These doors unexpectedly slamming closed is an on-going repetitive problem of which PCL is aware. For these reasons, PCL's duty of care includes maintaining and installing mechanisms on the doors to prevent them from slamming shut on board the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022.

29.    PCL knew or should have known these doors would be utilized during the cruise. PLC knew or should have known that the doors should be safe for guests to utilize during the cruise. Therefore, the door and door mechanisms needed to be sufficient for the circumstances for which PCL should have reasonably anticipated, which includes opening and closing these doors during the cruise.

30.    PCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  PCL's ingress and egress doors are escape routes that PCL knew or should have known it must maintain in a safe condition.

31.    PCL's egress/ingress doors are heavily used during cruises. PCL knows that it must maintain these doors in a condition that complies with applicable industry standards, statutes, and/or regulations as part of its maintenance program to prevent injuries to passengers.

32.    PCL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

33.    PCL knew or should have known about the dangerous condition of the doors on its ships from prior similar incidents. PCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

34.    PCL, at all relevant times, knew or should have known of industry safety standards applicable to doors, door frames and door components. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.

35.    PCL knows that these doors may slam shut and even posts caution signs on or around some of their ingress/egress doors due to their knowledge of the danger these doors pose to passengers.

36.    PCL knew or should have known that these doors were dangerous prior to the incident involving the Plaintiff. Because of this knowledge, PCL must be vigilant to warn passengers and maintain the doors in a reasonably safe condition so that the doors do not unexpectedly slam close or trap unsuspecting passengers.

37.    The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care, the Defendant should have known about it.

38.    In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) through its own acts and/or omissions the Defendant caused the dangerous condition to come about or exacerbated the dangerous condition through negligently

maintaining and failing to install a mechanism on the door to prevent it from slamming shut on RALPH VAUGHN on March 31, 2022. Therefore, no notice to the Defendant is required.

39. **PRINCESS BREACHED ITS DUTY:** PCL breached its duty of reasonable care owed to the Plaintiff under the circumstances. PCL breached its duty of reasonable care owed to the Plaintiff because PCL failed to maintain its egress and ingress doors in a safe condition. PCL failed to reasonably inspect, maintain, repair, operate, and/or service the subject door. PCL failed to maintain and install a mechanism on the door to prevent it from slamming shut, including the door that injured RALPH VAUGHN. PCL breached its duties to RALPH VAUGHN by its actions and conduct. PCL, through its crew members, failed to reasonably maintain and install a mechanism on the door to prevent it from slamming shut. PCL failed to inspect, maintain, operate, and/or repair the subject door in accordance with applicable industry standards, statutes, and/or regulations.

40. **PROXIMATE CAUSE:** PCL's failure to maintain and install a mechanism on the door to prevent it from slamming shut and failure to reasonably inspect, maintain, repair, operate, and/or service the subject door caused severe and permanent injuries to the Plaintiff on March 31, 2022. As a direct and proximate result of the negligence of PCL, the Plaintiff suffered severe and permanent injuries. Had PCL properly maintained, inspected, repaired, operated, and/or serviced the door or installed and/or maintained an adequate mechanism on the door, the door would have never slammed shut and RALPH VAUGHN would have never been injured.

41. **DAMAGES:** PCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related

expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against PCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## **COUNT II**
## **NEGLIGENT FAILURE TO WARN**

42. The Plaintiff RALPH VAUGHN hereby adopts and realleges each and every allegation in paragraphs 1 through 24 above.

43. This is an action for negligence of PCL failing to warn passengers, including the Plaintiff, of the risks, hazards, and dangers.

44. **DUTIES OWED BY PRINCESS:** PCL owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584

16

1    (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known

2    to the carrier in places where the passenger is invited to or may reasonably be

3    expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th

4    Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the

5    part of a carrier to furnish its passengers with a reasonably safe means of boarding

6    and leaving the vessel, that this obligation is non-delegable, and that even the

7    slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*,

8    475 So.2d 248 (Fla. 3d DCA 1985).

9    45.    PCL, at all relevant times, was also under a legal duty to comply with

10    mandatory international vessel safety regulations that are promulgated by the

11    International Maritime Organization (IMO) under authority expressly conferred

12    by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty,

13    including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be

14    provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition

15    clear of obstacles.")  PCL's ingress and egress doors are escape routes that PCL

16    knew or should have known it must maintain in a safe condition.

17    46.    PCL owes a duty as a common carrier to its passengers of dangers known

18    to PCL where PCL invites or reasonably expects passengers to go.  PCL owes a

19    duty of reasonable care under the circumstances.   The circumstances are as

20    follows. PCL's operations involve attracting crowds to a central location and

21    controlling and ensuring the safety of those crowds. Throughout PCL's ships, it

22    has ingress and egress doors to allow passengers to travel from the interior of the

23    ship to the exterior of the ship. Further, these doors connecting the interior to the

24    exterior of the ship are escape routes that must be maintained in a safe condition.

25    These doors are also labeled with "Exit" signs. PCL anticipates, expects and

26    advises passengers to utilize these doors for such purpose. These doors

27    unexpectedly slamming shut is an on-going repetitive problem of which PCL is

28    aware. For these reasons, PCL's duty of care includes warning of the dangerous

conditions on board the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022.

47.    PCL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

48.    PCL knew or should have known about the dangerous condition of the doors on its ships from prior similar incidents. PCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

49.    PCL, at all relevant times, knew or should have known of industry safety standards applicable to doors, door frames and door components. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.

50.    PCL knows that these doors may slam shut and even posts caution signs on or around some of their ingress/egress doors due to their knowledge of the danger these doors pose to passengers.

51.    PCL knew or should have known that these doors were dangerous prior to the incident involving the Plaintiff. Because of this knowledge, PCL must be vigilant to warn passengers so that the doors do not unexpectedly slam close or trap unsuspecting passengers.

52.    The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

53.     PCL is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to PCL where PCL invites or reasonably expects passengers to go. PCL distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  PCL train its crew members to warn passengers of hazardous verbally, with adequate warning signs, and/or marking the area or blocking off the area to prevent passengers from accessing the dangerous condition.

54.     **PRINCESS BREACHED ITS DUTY:** PCL breached its duty to adequately warn the Plaintiff of dangerous condition *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022. PCL breached its duties to the Plaintiff by its actions and conduct.  The caution signs selected, approved, and utilized onboard the *Princess Emerald* show PCL knew that this door was hazardous to passengers.  However, the dangerous condition was not readily apparent to passengers.  This dangerous condition was not readily apparent because PCL approved and selected signage that did not communicate this hazard.  The sign utilizes small font and is placed directly under a window. PCL approved this placement, which allowed sunlight to interfere with RALPH VAUGHN and other passengers' ability to read the sign. PCL misplaced the sign, failed to utilize enough signs, and chose a sign that would not alert passengers to this dangerous condition. PCL's crew members failed to reasonably and regularly make audible announcements regarding the dangerous condition. PCL also failed to comply with applicable industry standards, statutes, and/or regulations.

55.     **PROXIMATE CAUSE:** PCL's failure to properly warn the Plaintiff of the dangerous condition proximately caused the Plaintiff's injuries.  Had PCL properly warned the Plaintiff of the dangerous condition, the Plaintiff would never have been aware of the dangerous conditions, including the subject door that slammed shut and injured the Plaintiff. RALPH VAUGHN, therefore would have

never been injured by the door on Deck 14 that slammed shut on his hand on March 31, 2022.

56.     **DAMAGES:** PCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III

## NEGLIGENT TRAINING AND SUPERVISION OF PERSONNEL

57.     The Plaintiff RALPH VAUGHN hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 24, above.

/ / /

58.     This is an action for negligence due to PCL's negligent training and supervision of shipboard crew members.

59.     **DUTIES OWED BY PRINCESS:** PCL owes a duty of reasonable care under the circumstances. PCL owes a duty to its passengers to train its crew members to warn of dangers known to PCL where PCL invites or reasonably expects passengers to go. The circumstances are as follows. PCL's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Throughout PCL's ships, it has ingress and egress doors to allow passengers to travel from the interior of the ship to the exterior of the ship. Further, these doors connecting the interior to the exterior of the ship are escape routes that must be maintained in a safe condition. These doors are also labeled with "Exit" signs. PCL anticipates, expects and advises passengers to utilize these doors for such purpose. These doors slamming shut is an on-going repetitive problem of which PCL is aware. For these reasons, PCL's duty of care includes warning passengers of the danger these doors pose and maintaining and installing mechanisms on the doors to prevent them from slamming shut on board the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022.

60.     PCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  PCL's ingress and egress doors are escape routes that PCL knew or should have known it must maintain in a safe condition.

61.     PCL trains its shipboard crewmembers to warn passengers of the dangerous conditions on board the *Emerald Princess*, that may cause injuries to passengers.

21

PCL knew or should have known of the importance of training its crewmembers to warn passengers of the dangerous conditions on board the *Emerald Princess*. PCL trains its crewmembers that passengers may not know that structures onboard *Emerald Princess* may be dangerous and could cause injuries to passengers. PCL knew or should have known the importance of training its crewmembers that passengers may not know that structures onboard *Emerald Princess* may be dangerous and could cause injuries to passengers. PCL trains its crewmembers to warn passengers of hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from being injured. PCL knew or should have known of the importance of training its crew members to warn passengers of hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from being injured. However, despite knowing how and the reason why PCL should train its crewmembers, PCL failed to do so.

62.    PCL's duty to properly train its crewmembers is part of PCL's duty of reasonable care under the circumstances. This duty requires PCL to properly train its crew members to properly warn passengers of dangerous conditions on board the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022.

63.    PCL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

64.    PCL knew or should have known about the dangerous condition of the doors on its ships from prior similar incidents. PCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

65.    PCL, at all relevant times, knew or should have known of industry safety standards applicable to doors, door frames and door components. Prominent safety

organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.

66.    PCL knows that these doors may slam shut and even posts caution signs on or around some of their ingress/egress doors due to their knowledge of the danger these doors pose to passengers.

67.    The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

68.    PCL should have become aware that it had failed to properly train and supervise its crew members, given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022.

69.    **PRINCESS BREACHED ITS DUTY:** PCL breached its duty of care owed to the Plaintiff and was negligent by failing to reasonably train its crew members to warn passengers of the dangerous conditions onboard the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022.  PLC also failed to reasonably train its crew members to inspect, maintain, or repair the subject door. PLC also violated applicable and mandatory safety regulations and standards.

70.    **PROXIMATE CAUSE:** PCL's failure to properly train and supervise PCL crew members proximately caused the Plaintiff's injuries.  Had PCL properly trained and/or supervised PCL's crew members to warn passengers of

dangerous conditions or inspect and maintain the doors on board the *Emerald Princess*, including the door on Deck 14 that slammed shut and injured RALPH VAUGHN on March 31, 2022, the crewmember would have warned RALPH VAUGHN of the dangerous condition or the condition would have been repaired and RALPH VAUGHN would never have been injured by the door on Deck 14 that slammed shut on him on March 31, 2022.

71.    **DAMAGES:** PCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

/ / /

<u>**COUNT IV**</u>

**<u>NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF</u>**

**<u>MATERIALS</u>**

72.    The Plaintiff RALPH VAUGHN hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 24 above.

73.    This is an action for negligence due to PCL's participation design, construction, and selection of materials.

74.    **<u>DUTIES OWED BY PRINCESS:</u>** PCL owes a "duty to exercise reasonable care for the safety of its passengers" including BARNES. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of materials on the *Emerald Princess.*

75.    PCL owes a duty of reasonable care under the circumstances.  The circumstances are as follows.  PCL owns and/or operates the *Emerald Princess*. PCL's *Emerald Princess* was built in Fincantieri's Monfalcone shipyard in Italy. The PCL's *Emerald Princess* was launched on June 1, 2006, and made its maiden voyage on April 11, 2007.  PCL has operated and maintained the ship continuously since then.

76.    PCL custom designed and custom built the *Emerald Princess* to PCL's specifications which include the subject door on Deck 14. Any refits, modifications and/or changes made to the PCL *Emerald Princess* were made in accordance with PCL's custom designs and selection of changes and modifications of areas and features of the *Emerald Princess*. At all times PCL had the ultimate control over the design and construction of the *Emerald Princess*. PCL had the right to inspect both the designs on paper and the design and

construction at the yard.  PCL had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Emerald Princess* including all doors, door frames and door components.  PCL had the right to reject any and all items, designs and construction.   PCL holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

77.    A cruise line, like PCL, may be found liable for negligent design when the cruise line created, participated in or approved the design of the area of injury. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837 (11th Cir. 2012); *see also Whelan v. Royal Caribbean Cruises, Ltd.*, 2013 WL 5583970, at *4 (S.D. Fla. Aug. 14, 2013).  PCL maintains shoreside departments that are responsible for creating, participating in and/or approving the design, selection, and construction of all aspects and/or features of PCL's ships including all doors, door frames and door components.  PCL also maintains shoreside departments that create, participate and/or approve changes and modifications to the design, construction, and selection of materials when PCL refits or modify its ships including all doors, door frames and door components. These shoreside departments consist of naval architects, engineers, designers, and other employees who are employed by PCL.  As such, PCL maintained the ultimate control over the design and construction of the *Crown*-class ships including the *Emerald Princess*.  Upon information and belief, PCL's contract with the shipyard allowed PCL to make progressive payments as work was completed. PCL's payment scheme allowed PCL the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

78.    PCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty,

including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  PCL's ingress and egress doors are escape routes that PCL knew or should have known it must maintain in a safe condition.

79.    PCL selected and/or approved of all materials on board the *Emerald Princess* including the door on Deck 14 that slammed shut and injured Plaintiff.

80.    PCL should have known the doors, door frames and door components it chose to create, design, and construct are unreasonably dangerous.

81.    PCL knew or should have known about the dangerous condition dangerous condition of the doors on its ships from prior similar incidents. PCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

82.    PCL knows that these doors may slam shut and even posts caution signs on or around some of their ingress/egress doors due to their knowledge of the danger these doors pose to passengers.

83.    The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

84.    PCL's duty to design, construct and select safe materials for all areas and features of its vessels, including all doors, door frames and door components aboard the *Emerald Princess,* is part of PCL's duty of reasonable care under the circumstances.  PCL had a duty to design all doors, door frames and door

components in a safe manner and in accordance with industry standards. PCL's duty is part of its duty of reasonable care under the circumstances.

85. **PRINCESS BREACHED ITS DUTY:** PCL breached its duty of care owed to the Plaintiff and was negligent by failing to design, construct, select, approve and/or reject the door on Deck 14 that slammed shut and injured the Plaintiff on March 31, 2022. PCL failed to design, construct, select, approve and/or reject materials that complied with industry standards. The designs and/or materials PCL selected and used on board the *Emerald Princess* are unreasonably dangerous.

86. Because PCL had the ultimate control over the design, construction and selection of materials for its ships, PCL could refuse to approve the design, construction and selection of materials used on board the *Emerald Princess*. PCL knew or should have known about the dangerousness of the door on Deck 14 that slammed shut and injured the Plaintiff on March 31, 2022.

87. PCL knew or should have known of the dangerousness of the doors, door frames and door components since the installation of the doors, door frames and door components and/or any subsequent changes or modifications made to doors, door frames and door components and/or any and all other instances

88. **PROXIMATE CAUSE:** PCL's negligent design, construct, and select materials proximately caused the Plaintiff's injuries. Had PCL properly designed, constructed, and selected the doors, door frames and door components, the door would not have slammed shut and the Plaintiff would never have had his finger partially severed by the heavy dangerous door.

89. **DAMAGES:** PCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss

28

1  of income earning capacity for the future. Those injuries and damages also include

2  but are not limited to non-economic damages including pain, suffering, disability,

3  physical impairment, scarring, disfigurement, mental anguish, inconvenience, and

4  loss of capacity for the enjoyment of life.  The losses are either permanent or

5  continuing.  The Plaintiff has suffered these losses in the past and will continue

6  to suffer them in the future.

7       WHEREFORE, the Plaintiff demands Judgment against the Defendant for

8  damages recoverable under the general maritime law and state law including but not

9  limited to economic damages including medical, psychological, and other related

10  expenses in the past and in the future; lost income in the past and lost income and

11  earning capacity in the future; non-economic damages in the past and in the future

12  including pain, suffering, disability, physical impairment, scarring, disfigurement,

13  mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all

14  court costs, all interest due under the applicable law including interest from the date

15  of the subject incident under General Maritime Law, and any and all other damages

16  which the Court deems just or appropriate.

17  DATED: March 3, 2023           LAW OFFICES OF

18                                          AKSANA M. COONE

19                                          BY: *s/ Aksana M. Coone*

20                                          Aksana M. Coone, Esq.

21                                          Attorneys for Plaintiff
                                        RALPH VAUGHN

22                                          HICKEY LAW FIRM

23

24                                          BY: *s/ John H. Hickey*

25                                          John H. Hickey, Esq.
                                        Cara Lea Hytinen, Esq.

26                                          (*Pro Hac Vice to be Filed*)
                                        Attorneys for Plaintiff

27                                          RALPH VAUGHN

28